Joseph Trinidad & Anthony E. Paupaw
3513 Covent Oak Court
High Point, NC 27265

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| JOSEPH TRINIDAD & ANTHONY E. PAUPAW | Case # **10-716** |
|---|---|
| Plaintiff, | |
| vs. | **PLAINTIFFS REPLY TO DEFENDANTS MOTION TO DISMISS COMPLAINT** |
| OCWEN LOAN SERVICING LLC | Dated: November 16, 2010 |
| Defendant | |

(1) The Plaintiff, in her Original Petition, plead that Defendant charged false fees as stipulated to Plaintiff as listed on the HUD 1 Settlement Statement. Plaintiff specifically plead that Defendant, at the time of settlement of the contract, Defendant failed to provide documentation to establish that said fees were not included in those fees expressly addressed by the Real Estate Settlement Procedures Act as forbidden to be charged to Plaintiff at settlement.

(2) Plaintiff stipulated each fee charged with particularity. Plaintiff calculated the precise amount that Plaintiff would have overpaid the note had Plaintiff paid off the note as stipulated by the Truth In Lending Statement provided by Defendant. Plaintiff specifically alleged that said fees were fraudulent. Plaintiff alleged that Defendant failed to provide full disclosure by failing to provide documentation to prove that the above fees were authorized by law, that the services alleged provided were necessary, that the amount charged for each service was necessary, and that Defendant did not take an undisclosed markup on said fees.

(3) Plaintiff further alleged that Defendant, acting in concert and collusion with the loan broker, toward the perpetration of a carefully contrived connivance, provided the amounts listed in the HUD 1 Settlement Statement, to the loan broker as an undisclosed yield spread premium. Said undisclosed yield spread premium is alleged to be in

RESPONSE TO DISMISSAL 1 of 13

26 addition to the one percent loan origination fee, charged to Plaintiff, as allowed by law.
27 Plaintiff alleged that said payment to the broker of undisclosed yield spread premium was
28 a predicate act intended to improperly influence loan broker to misrepresent facts to
29 Plaintiff, to give partial disclosure of those facts which would appear favorable to the
30 intent of the loan broker, while failing to give full disclosure of other facts that would not
31 seem favorable to the contract.

32 (4) By the above, Plaintiff stated a claim for which recovery could be had, and therefore,
33 Defendant's motion to dismiss is frivolous. Plaintiff moves the court to deny Defendant's
34 pleading, or, in the alternative, treat Defendant's pleading as a request for more definite
35 statement, in which case, Plaintiff will provide a more definite statement as requested.

36 (5) Further, Plaintiff moves the court to order sanctions against Defendant for filing a
37 frivolous pleading and for failing to speak with candor to the court as Defendant is totally
38 inept or acted with deliberate intent to improperly influence the court with false
39 pleadings.

## STATUTE OF LIMITATIONS/ EQUITABLE TOLLING

41 (6) Plaintiff acted with due diligence by dealing only with licensed professionals. Plaintiff,
42 by so doing had cause to trust in the proactive statements of Defendants concerning the
43 true value of the property, the condition of the real estate market, and the propriety of the
44 fees charged to Plaintiff at closing. Defendants acted with deliberate malice toward
45 Plaintiff in that Defendants by making proactive statements to Plaintiff that revealed
46 certain facts which would give a reasonable person of ordinary prudence cause to believe
47 the current loan was properly priced and that said loan was the only loan Plaintiff
48 qualified for while withholding facts which would have given Plaintiff full disclosure.
49 Defendants actively concealed the complete truth from Plaintiff with the intent of
50 defrauding Plaintiff.

51     a. The Eleventh Circuit stated that "in deciding whether the statute should be tolled,
52        it must be determined whether a 'reasonably diligent plaintiff' would have
53        discovered the fraud." Id. ( *Sterlin v. Biomune Systems, 154 F.3d 1191, 1201*
54        *(10th Cir. 1998))*.

55 (7) Plaintiff, once put on notice of the pervasive fraud affecting the real estate industry, acted
56 immediately with due diligence and engaged professionals to examine into the propriety
57 of the practices engaged in by Defendants.

  a. The First Circuit, based on the same rationale as the Seventh Circuit, has stated that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, . . . his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." <u>Maggio v. Gerard Freezer & Ice Co.</u>, 824 F.2d 123, 128 (1st Cir. 1987).

(8) Defendants acted in concert an collusion, one with the other, in an organized scheme wherein, from the beginning, one predicate act after another was committed against Plaintiff in order to establish trust, then use that trust to perpetrate fraud against Plaintiff by systematically making false claims to Plaintiff in order to induce Plaintiff into entering into an express contract that was based on fraud. Plaintiff acted in good faith in all things and with due diligence by only dealing with licensed professionals. In as much as all actors were professionals, duly licensed by the state and federal governments and all governed by the relevant consumer protection laws, Plaintiff had cause to expect good faith and fair dealings from said licensed professionals.

  a. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [\*15] Rest.2d Contracts § 205. A mortgage broker has fiduciary duties. Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773. Further, In Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917.*

  b. "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to place them in that loan." *(California Department of Real Estate, Section 8: Fiduciary Responsibility, www.dre.ca.gov).*

(9) Plaintiff had no notice of wrong doing until the improprieties of the real estate market were finally made public in the popular media.

  **a.** Other courts have indicated the one-year limitations period commences when the plaintiff is placed on inquiry notice, unless the plaintiff can show the actual exercise of reasonable diligence to discover the fraud. If the plaintiff can show the exercise of such diligence, the limitations period begins to run when the plaintiff actually discovers the facts underlying the alleged fraud. If, however, the plaintiff cannot show such actual diligence, constructive knowledge of the fraud is imputed to the plaintiff as of the date of inquiry notice. For example, in <u>Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993)</u>, the Second Circuit stated that "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." <u>Id. at 350</u>. The Dodds court further stated that the doctrine of "equitable tolling will stay the running of the statute of limitations only so long as the

RESPONSE TO DISMISSAL                                3 of 13

Case 1:10-cv-00716-NCT-WWD Document 19 Filed 11/16/10 Page 3 of 11

plaintiff has exercised reasonable care and diligence in seeking to learn the facts which would disclose [**35] fraud." Id. (internal quotations omitted). *Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.*

(10) When Plaintiff became aware of potential fraud by the licensed professionals Plaintiff had been induced to trust, Plaintiff made due diligent inquiry and discovered the fraud complained of herein.

    a. Plaintiff exercised due diligence and the time limitations in the Truth in Lending Act should be tolled so that the intent of the Legislature may be realized. The Seventh Circuit, essentially merging the inquiry notice and reasonable diligence standards into one governing standard, has indicated that a plaintiff is not put on inquiry notice until the plaintiff reasonably should have discovered the fraud. *See* Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997) ("Inquiry notice does not begin to run unless and until the investor is able, with the exercise of reasonable diligence (whether or not actually exercised), to ascertain the information needed to file suit."); *see also* Law v. Medco Research, Inc., 113 F.3d 781, 785 (7th Cir. 1997) ("The plaintiff gets a year after he learned or should have learned the facts that he must know to know that he has a claim."). An earlier Seventh Circuit case, however, rejected the plaintiff's argument that "in spite of reasonable diligence, it could not discover the facts underlying the defendants' fraud" and held that the one-year limitations period began to run once the plaintiff was placed on inquiry notice of the possibility of fraud. Whirlpool Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995). Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.

(11) In the alternative, the acts as alleged against Defendants amount to criminal fraud in that, in a scheme to deceive and mislead Plaintiff, Defendants, by sham and trickery, induced Plaintiff into entering into a predatory loan contract wherein Plaintiff was charged amounts not allowed by law. Defendants, in perpetrating the above referenced predicate acts toward their carefully crafted criminal conspiracy, relied on the trust engendered by the laws intended to protect Plaintiff and others similarly situated from just the sort of abuse visited on Plaintiff. Plaintiff alleges a scheme of fraud and, therefore, upon proof at trial, Plaintiff has a right to seek common law equitable recoupment.

### *A. TENDER BY SETOFF*

(12) Plaintiff has alleged a conspiracy on the part of all defendants which gives Plaintiff a claim against all defendants equally as coconspirators, Plaintiff has an equitable right to claim tender by setoff against the claims herein made against defendants.

140    **PLAINTIFF MADE CLAIMS WITH SPECIFICITY AND PARTICULARITY**

141 (13) Plaintiffs alleged that the original lender overpaid the loan originator, with fees
142 improperly charged to Plaintiff at closing in order to induce the originator of the loan to
143 breach his fiduciary duty to Plaintiff. By doing this, they committed common law fraud
144 by making false statements to Plaintiff in order to convince Plaintiff that Plaintiff only
145 qualified for a more expensive loan product than Plaintiff actually qualified for. Plaintiff
146 is prepared to prove up said claims after discovery, at a trial on the merits.

147 (14) Plaintiff alleged that Defendant(s) made partial disclosure of alleged facts
148 concerning the conditions of the loan which is the basis for the issuance of the security
149 instrument and lien document at issue. Plaintiff is prepared to prove at trial, after
150 complete discovery that Defendant(s) failed to give full disclosure of facts that, if
151 disclosed would have caused Plaintiff to make a different decision than the one made.

152 (15) Plaintiff alleged that the trustee, at closing, executed a carefully contrived
153 connivance intended to apply undue pressure on Plaintiff in an effort to effect lack of full
154 disclosure to Plaintiff and induce Plaintiff to enter into a contract without said full
155 disclosure. Plaintiff is prepared to provide proof, at trial, sufficient to convince a jury.

156 (16) Plaintiff alleges that, at closing, false fees were charged to Plaintiff by lender. Said
157 allegations are reiterated below with specificity. Plaintiff alleged that the original lender
158 sold the security instrument immediately after closing, but failed to transfer the lien
159 document to the purchaser of said security instrument. Plaintiff is prepared to prove,
160 subsequent to discovery, that the lender, while still holding the security instrument,
161 received consideration and, therefore, could not be harmed rendering the lien
162 unenforceable.

163 (17) Plaintiff alleged, and is prepared to prove at trial, that the lender maintained
164 possession of the lien document in order to be able to file an IRS Form 1099a and write
165 the entire amount of the original note off lender's capital gains tax and, thereby, receive
166 consideration a second time.

167 (18) Plaintiff alleged, and is prepared to prove at trial that, the original security
168 instrument, if said instrument still exists, may give the holder a claim against the signator,
169 but have no claim against the property.

170 (19) Plaintiff alleged, and is prepared to prove at trial that, OCWEN Loan Servicing
171 LLC, and the attorneys claiming to represent same, have committed fraud by representing

172 to the court that OCWEN Loan Servicing LLC is as real party in interest in the contract
173 of sale and has standing to take said property from defendant when no such claim exists.

174 (20) Plaintiff has alleged, and is prepared to prove at trial, that the defendant(s), by
175 claiming standing to express the provisions of the contract of sale and lien, claim to be
176 real parties in interest and, therefore, under the Federal Trade Commission Holder Rule
177 16 CFR 433, are subject to any claim Plaintiff may have against the original lender.

178 ### B. LENDER CHARGED FALSE FEES

179 (21) Lender charged fees to Plaintiff that were in violation of the limitations imposed by
180 the Real Estate Settlement Procedures Act as said fees were simply contrived and not
181 paid to a third party vendor.

182 (22) Lender charged other fees that were a normal part of doing business and should have
183 been included in the finance charge.

184 (23) Below is a listing of the fees charged at settlement. Neither at settlement, nor at any
185 other time did Lender or Trustee provide documentation to show that the fees herein listed
186 were valid, necessary, reasonable, and proper to charge Petitioner.

| | | |
|---|---|---|
| 801 | Loan Origination Fee | $2,686.40 |
| 811 | Commitment Processing Fee | $550.00 |
| 812 | Broker Fee | $671.60 |
| 813 | Tax Service Fee | $60.00 |
| 814 | Flood Cert Fee | $7.00 |
| 815 | MERS Fee | $3.95 |
| 901 | Interest from 12/21/2005 to 01/01/06 @$ 30.18 /day | $331.98 |
| 1001 | Hazard Insurance | $195.24 |
| 1004 | County Property Taxes | $1,162.07 |
| 1106 | Notary Fee | $8.00 |
| 1107 | Attorney Fee | $550.00 |
| 1108 | Title Insurance | $358.80 |
| 1112 | Courier Fee | $45.00 |
| 1113 | Recording Fee | $83.00 |

187 (24) Debtor is unable to determine whether or not the above fees are valid in accordance
188 with the restrictions provided by the various consumer protection laws. Therefore it was
189 demanded to please provide;

190     a. a complete billing from each vendor who provided the above listed services;

191     b. the complete contact information for each vendor who provided a billed service;

192    c. clearly stipulate as to the specific service performed;

193    d. a showing that said service was necessary;

194    e. a showing that the cost of said service is reasonable;

195    f. a showing of why said service is not a regular cost of doing business that should
196       rightly be included in the finance charge.

197 (25) The above charges have been disputed and deemed unreasonable until such time as
198 said charges have been demonstrated to be reasonable, necessary, and in accordance with
199 the limitations and restrictions included in any and all laws, rules, and regulations
200 intended to protect the consumer.

201 (26) In the event lender fails to properly document the above charges, borrower will
202 consider same as false charges. The effect of the above amounts that borrower would pay
203 over the life of the note will be an overpayment of $565,076.79. This amount will be
204 reduced by the amount of items above when said items are fully documented.

### *C. RESPA PENALTIES*

206 (27) From a cursory examination of the records, with the few available, the apparent
207 RESPA violations are as follows:

208    a. Good Faith Estimate not within limits

209    b. No HUD-1 Booklet

210    c. Truth In Lending Statement not within limits compared to Note

211    d. Truth in Lending Statement not timely presented

212    e. HUD-1 not presented at least one day before closing

213    f. No Holder Rule Notice in Note

214    g. No 1st Payment Letter

215        1. No signed and dated :

216        2. Financial Privacy Act Disclosure;

217        3. Equal Credit Reporting Act Disclosure;

218            4. notice of right to receive appraisal report;

219            5. servicing disclosure statement;

220            6. borrower's Certification of Authorization;

221            7. notice of credit score;

222            8. RESPA servicing disclosure letter;

223            9. loan discount fee disclosure;

224            10. business insurance company arrangement disclosure;

225            11. notice of right to rescind.

226 (28) The courts have held that the borrower does not have to show harm to claim a violation of
227 the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance.
228 And, in as much as the courts are directed to assess a penalty of no less than two hundred
229 dollars and no more than two thousand, considering the large number enumerated here, it is
230 reasonable to consider that the court will assess the maximum amount for each violation.

231 (29) Since the courts have held that the penalty for a violation of RESPA accrues at
232 consummation of the note, borrower has calculated that, the number of violations found in a
233 cursory examination of the note, if deducted from the principal, would result in an
234 overpayment on the part of the borrower, over the life of the note, of $672,750.20.

235 (30) If the violation penalty amounts for each of the unsupported fees listed above are
236 included, the amount by which the borrower would be defrauded is $712,012.11

237 (31) Adding in RESPA penalties for all the unsupported settlement fees along with the
238 TILA/Note variance, it appears that lender intended to defraud borrower in the amount of
239 $2,747,956.45

240                              **MORE DEFINITE STATEMENT**

241 (32) Plaintiff is willing to prepare a more definite statement for the court. Subsequent to the
242 filing of the original complaint, Plaintiff has made inquiry and found evidence of knowing and
243 deliberate criminal acts by lenders intended to defraud Plaintiff of Plaintiff's property and is
244 prepared to file a more definite statement with the court.

# CONCLUSION

(34) Plaintiff maintains that Defendant(s) motion of dismissal is without merit, and that counsel, in making said claim, has failed to speak with candor with the court.


Respectfully Submitted,

*[signature]*

**Joseph Trinidad**

## VERIFICATION

I, Joseph Trinidad & Anthony E. Paupaw, do swear and affirm that all statements made herein are true and accurate, in all respects, to the best of my knowledge.

Joseph Trinidad   Anthony E. Paupaw
3513 Covent Oak Court
High Point, NC 27265

*[signature]*   *[signature]*

**Joseph Trinidad**   Anthony E. Paupaw

The Persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that they executed the same in their authorized capacity and that by his signature on this instrument who are the persons who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

*[signature: Ruth A Kormendy]*

**NOTARY PUBLIC IN AND FOR**
**THE STATE OF NORTH CAROLINA**

RUTH A KORMENDY
NOTARY PUBLIC
GUILFORD COUNTY
NORTH CAROLINA
My Commission Expires August 20, 2011

**Notary Seal**

## CERTIFICATE OF SERVICE

We, Joseph Trinidad and Anthony E. Paupaw, do swear and affirm that we have served a signed copy of this Response to defendants motion to dismiss to any and all defendants by way of U.S.P.S. regular mail on the 16th day of November, 2010..

_____    _____
Joseph Trinidad                                                  Anthony E. Paupaw

The Persons above, who proved to me on the basis of satisfactory evidence to be the persons whose names are subscribed to this document and acknowledged to me that they executed the same in their authorized capacity and that by their signatures on this instrument who are the persons who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____

**NOTARY PUBLIC IN AND FOR**
**THE STATE OF NORTH CAROLINA**

RUTH A KORMENDY
NOTARY PUBLIC
GUILFORD COUNTY
NORTH CAROLINA
My Commission Expires August 20, 2011
Notary Seal